*This opinion is subject to administrative correction before final disposition.*

# United States Navy–Marine Corps
# Court of Criminal Appeals

Before
CRISFIELD, HITESMAN, and KOVAC,
Appellate Military Judges

———————————

**UNITED STATES**
Appellee

**v.**

**Brian D. LOHR**
Intelligence Specialist First Class (E-6), U.S. Navy
Appellant

**No. 201800199**

Decided: 17 January 2020

Appeal from the United States Navy-Marine Corps Trial Judiciary. Military Judge: Commander Arthur L. Gaston, III, JAGC, U.S. Navy. Sentence adjudged 2 March 2018 by a general court-martial convened at Naval Support Activity, Naples, Italy; Naval Station Norfolk, Virginia; and U.S. Army Garrison, Stuttgart, Germany, consisting of members with enlisted representation. Sentence approved by the convening authority: reduction to pay grade E-1, forfeiture of all pay and allowances, confinement for six months, and a dishonorable discharge.

For Appellant: Philip D. Cave, Esq.; J. Thomas Province, Esq.; Lieutenant Commander Jeremy J. Wall, JAGC, U.S. Navy.

For Appellee: Lieutenant Kurt W. Siegal, JAGC, U.S. Navy; Lieutenant Clayton S. McCarl, JAGC, U.S. Navy; Major Kerry E. Friedewald, U.S. Marine Corps; Lieutenant Timothy C. Ceder, JAGC, U.S. Navy.

———————————

**This opinion does not serve as binding precedent, but may be cited as persuasive authority under NMCCA Rule of Appellate Procedure 30.2.**

_____

PER CURIAM:

Appellant was found guilty by members with enlisted representation, contrary to his pleas, of one specification of indecent visual recording, one specification of assault consummated by a battery, and one specification of patronizing a prostitute, in violation of Articles 120c, 128, and 134, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 920c, 928, 934 (2016).

Appellant asserts eleven assignments of error (AOE): (1) the evidence to support his conviction of indecent visual recording is legally and factually insufficient; (2) the military judge erred when he failed to give a mistake of fact as to consent instruction for the assault charge; (3) the trial counsel made improper argument; (4) the evidence to support his conviction of assault is legally and factually insufficient; (5) the evidence to support his conviction of patronizing a prostitute is legally and factually insufficient; (6) the military judge abused his discretion in denying a challenge to Chief Yeoman LJ; (7) the military judge erred when he allowed evidence under Military Rule of Evidence 404(b) without providing a limiting instruction; (8) trial defense counsel was ineffective by failing to procure the services of an independent and unconflicted interpreter; (9) the record of trial is incomplete; (10) the First Amendment protects an individual's right to associate with prostitutes where there is no military nexus to the association;[1] and (11) the evidence fails to prove the scienter element of the indecent visual recording charge, as required by *Rehaif v. United States*, __ U.S. __, 139 S. Ct. 2191 (2019).

We find no merit in the AOEs and affirm the findings and sentence.

## I. BACKGROUND

Appellant visited a brothel while he was stationed in Germany. He paid for the sexual services of two prostitutes, one shortly after the other. His in-

---

[1] AOEs (4) through (10) are raised pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982). Having carefully considered those assignments of error, we find them to be without merit. *See United States v. Clifton,* 35 M.J. 79 (C.M.A. 1992); *United States v. Matias*, 25 M.J. 356, 363 (C.M.A. 1987), *cert. denied*, 485 U.S. 968 (1988).

teractions with the two prostitutes occurred in two separate bedrooms. Without obtaining their consent, Appellant videotaped both of the sexual encounters utilizing a camera hidden inside a tissue box. The first prostitute patronized by Appellant (the "first victim") did not see any camera in her bedroom when she was having sex with Appellant, but she remembered seeing a tissue box near her bed. The second prostitute (the "second victim"), while having sex with appellant, noticed a camera lens protruding from a tissue box next to her bed. She grabbed the box in alarm, asked in German "what is this?" and screamed for assistance. Appellant then forcibly tried to regain possession of his video camera and the two scuffled. In the course of the scuffle, Appellant assaulted the second victim by grabbing her around the torso, and she bit Appellant on the wrist. The conflict ended when the brothel's security guard entered the room. The brothel's staff called German police. Police arrived on the scene, seized the camera, and arrested Appellant. Video from the camera shows the buttocks, breasts, and genitalia of both victims.

Additional facts necessary to resolve the AOEs are contained below.

## II. DISCUSSION

### A. Appellant's Conviction of Charge I is Legally and Factually Sufficient

Appellant asserts that the evidence presented by the Government was legally and factually insufficient to prove that the second victim did not consent to being videotaped and that she had a reasonable expectation of privacy in her brothel bedroom. He also asserts that the evidence is legally and factually insufficient to prove that the first victim is the prostitute featured in the video.

We review questions of legal and factual sufficiency de novo. Article 66(c), UCMJ, 10 U.S.C. § 866(c) (2012); *United States v. Rosario*, 76 M.J. 114, 117 (C.A.A.F. 2017).

The test for legal sufficiency is whether, considering the evidence in the "light most favorable to the prosecution," a reasonable fact finder "could have found the essential elements of the crime beyond a reasonable doubt." *Rosario*, 76 M.J. at 117 (citation and internal quotation marks omitted). In resolving questions of legal sufficiency, we are "bound to draw every reasonable inference from the evidence of record in favor of the prosecution." *United States v. Nicola*, 78 M.J. 223, 226 (C.A.A.F. 2019) (citation and internal quotation marks omitted).

The test for factual sufficiency is whether "after weighing the evidence in the record of trial and making allowances for not having personally observed the witnesses, [this Court is] convinced of Appellant's guilt beyond a reasona-

ble doubt." *Rosario*, 76 M.J. at 117 (citation, internal quotation marks, and emphasis omitted). In conducting this unique appellate function, we take "a fresh, impartial look at the evidence," applying "neither a presumption of innocence nor a presumption of guilt" to "make [our] own independent determination as to whether the evidence constitutes proof of each required element beyond a reasonable doubt." *United States v. Washington*, 57 M.J. 394, 399 (C.A.A.F. 2002). Proof beyond a reasonable doubt does not mean, however, that "the evidence must be free from conflict." *United States v. Goode*, 54 M.J. 836, 841 (N-M. Ct. Crim. App. 2001) (citation and internal quotation marks omitted).

In order to convict Appellant of indecent visual recording as alleged in Charge I, the Government was required to prove the following elements:

(1) That Appellant knowingly recorded the private areas of the two victims;

(2) That the recording was done without the victims' consent; and

(3) That the recording was made under circumstances in which the victims had a reasonable expectation of privacy.

Art. 120c(a)(2), UCMJ.

The Government presented evidence from both victims that they did not consent to being videotaped by Appellant and did not know they were being videotaped. Both victims testified that they did not consent. It also presented evidence that Appellant hid his video camera inside a tissue box so that only the camera's lens was protruding from the box. The videos obtained from Appellant's camera showed the private areas of both victims. The evidence also established that prostitutes in the brothel had an expectation that when they were in their bedrooms with customers they would not be visible to the public. Based on the evidence presented, a reasonable fact finder could easily have found all the essential elements beyond a reasonable doubt.

Our independent review of the evidence similarly convinces us that each element was proven beyond a reasonable doubt. In particular, we are convinced that the second victim did not consent to being recorded. Her actions in the video and her testimony on the witness stand are completely consistent with one who was genuinely caught by surprise when she discovered the hidden camera. We are also convinced that the first victim is the person depicted in the video, notwithstanding its poor quality. The first victim's testimony that she recognized the bed and bedroom as hers, and that she remembered seeing a tissue box in the room when she was with Appellant, strongly corroborate the fact that it is her in the video. Having carefully considered the evidence in the record of trial and making suitable allowances for not having

personally observed the witnesses, we are convinced of Appellant's guilt of Charge I beyond a reasonable doubt.

## B. A Mistake of Fact as to Consent Instruction for Charge I was not Warranted

A military judge shall instruct on the elements of the offense and any affirmative, or "special," defenses reasonably raised. *See* RULE FOR COURTS-MARTIAL 920(E), MANUAL FOR COURTS-MARTIAL, UNITED STATES (2016 ed.); *United States v. Davis*, 76 M.J. 224, 228 (C.A.A.F. 2017). Mistake is an affirmative defense upon which the members shall be instructed if the defense was "reasonably raised by the evidence." *Davis*, 76 M.J. at 228. There "must be some evidence of an honest and reasonable mistake to which the members could have attached credit if they had so desired." *Id.* (quoting *United States v. Hibbard*, 58 M.J. 71, 75 (C.A.A.F. 2003)) (internal quotation marks omitted). We review de novo whether a special defense, such as mistake of fact, was raised such that it would require instruction by a military judge. *Id.* at 228-29.

At trial, Appellant's counsel asked for a mistake of fact instruction based on three assertions: (1) the victims looked at the camera lens; (2) the tissue box concealing the camera was brightly colored; and (3) the video camera beeps when turned on, at least when in its default setting.

The military judge denied Appellant's request, finding that there was no evidence that either victim saw the camera until the second victim grabbed it. He also found that the evidence supported the fact that Appellant had disguised his camera in a tissue box and started recording while the camera was out of view of the victims, indicating that Appellant did not actually believe they consented to being videotaped. Additionally, he found that the second victim testified that she did not hear a beep and that there was insufficient evidence to establish that the camera was even set up to beep when turned on. The military judge's findings are well supported by the evidence. We concur with his conclusion that there was no evidence of an honest and reasonable mistake by Appellant.[2]

---

[2] We also concur with the military judge's finding that even if there was some evidence that a victim saw that she was being recorded there would need to be *additional evidence* that *Appellant* realized that the victim saw the camera before the defense of mistake of fact could be reasonably raised.

## C. The Trial Counsel's Argument Was Not Plain Error

Appellant asserts that the trial counsel committed prosecutorial misconduct by making improper and prejudicial statements during argument on the merits and sentencing. On the merits, Appellant claims that the trial counsel purported to express thoughts of the Appellant that were not reasonably inferred from the evidence;[3] attempted to put the members on the prosecution team;[4] demonized Appellant;[5] impugned the integrity and institutional role of the defense counsel;[6] commented on Appellant's decision not to testify;[7] and personally vouched for evidence.[8] During sentencing, Appellant claims that the trial counsel committed prosecutorial misconduct by unfairly challenging Appellant's apology to the victims in his unsworn statement.

The trial defense counsel did not object to any of these arguments. Therefore, we review for plain error. *United States v. Andrews*, 77 M.J. 393, 398-99 (C.A.A.F. 2018). Plain error review requires there be an error; that the error was plain, or clear, or obvious; and that the error resulted in material prejudice to Appellant's substantial rights. *United States v. Maynard*, 66 M.J. 242, 244 (C.A.A.F. 2008). Appellant has the burden to establish plain error. *Id.*

Examining the various statements of trial counsel in his closing argument on the merits, we do not find that any constitute plain error, although some were inartfully phrased. With regard to Appellant's claim of improper sen-

---

[3] "He chose those victims because he thought people aren't going to care because this is—these are prostitutes." Record at 626.

[4] E.g., "We wear the uniform of our nation every day. We have a higher responsibility to the American people that we—that we defend. Any deck seaman can tell you right out of boot camp that we are United States Sailors 24-7." *Id.* at 626.

[5] "He disregarded their privacy, and he treated them as lesser people. That is the most chilling thing that he targeted them specifically because he thought, "Who cares? They're not people. They're prostitutes. They're not people." *Id.* at 637-38.

[6] "Throughout this trial, the defense has tried to create kind of—kind of a fog. . . . And they've tried to confuse the truth. . . . They're trying to distract about—from what really happened and what common sense[.]" *Id.* at 657.

[7] "It's without reason to speculate as to possibilities of other things that are going on that we don't have any direct evidence of. Other than what the government put on. Because that's the only case—that's the only case, that's the only evidence that you have." *Id.* at 666.

[8] "And I know that's hard to see from here, but you'll have it in the deliberation room. Trust me, when you—when you look at it, Lohr comma Brian, this is his apartment." *Id.* at 629.

tencing argument, we find no error, plain or otherwise. The trial counsel's sentencing argument, questioning the sincerity of Appellant's apology to the victims, was a fair comment on Appellant's unsworn statement.

Even if we were to find that any of the trial counsel's arguments rose to the level of plain error, there is no material prejudice to Appellant's substantial rights. Prosecutorial misconduct only merits relief where its "cumulative impact" is "so damaging that [this Court] cannot be confident that the members convicted the appellant on the basis of the evidence alone." *United States v. Fletcher*, 62 M.J. 175, 184 (C.A.A.F. 2005); *United States v. Pabelona*, 76 M.J. 9, 12 (C.A.A.F. 2017) (citation and internal quotation marks omitted).

Where improper argument occurs, this Court considers three factors to determine whether an appellant suffered prejudice: "(1) the severity of the misconduct, (2) the measures adopted to cure the misconduct, and (3) the weight of the evidence supporting the conviction." *Fletcher*, 62 M.J. at 184. If the weight of the evidence supporting the conviction is strong enough, that factor alone can establish lack of prejudice without reference to the first two factors. *See Pabelona*, 76 M.J. at 12 (citing *United States v. Halpin*, 71 M.J. 477, 480 (C.A.A.F. 2013)).

Assuming arguendo that the arguments constituted plain error, we are convinced that they did not alter the findings. The evidence on all three charges was overwhelming. We are also confident that the members' sentence of six months confinement, a dishonorable discharge, reduction in rank to pay-grade E-1, and total forfeitures of pay and allowances for his multiple offenses was based on the strength of the evidence and not on any improper argument. *See Id.* Accordingly, we find with confidence that Appellant was not prejudiced by any error in the trial counsel's arguments.

## D. Scienter Does Not Apply to the Lack of Consent Element in Art. 120c, UCMJ

Appellant asserts that the Government failed to prove the second element of the Art. 120c(a)(2), UCMJ, indecent recording offense (i.e., that Appellant *knew* that the victims did not consent to being recorded). Appellant claims that this evidentiary failure runs afoul of the Supreme Court's recent decision in *Rehaif v. United States*, __ U.S. at __, 139 S. Ct. 2191 (2019). Appellant interprets *Rehaif* as requiring scienter (i.e., "knowledge of wrongfulness") to apply to every element of Article 120c(a)(2), including the second element, the lack of consent.

We review de novo the statutory interpretation issue of determining which mens rea applies to an offense. *United States v. McDonald*, 78 M.J. 376, 378 (C.A.A.F. 2019).

In *Rehaif*, the Supreme Court was faced with the question of interpreting the scienter requirement in a federal criminal statute, 18 U.S.C. § 924(a)(2). This statute states that "whoever knowingly violates" 18 U.S.C. § 922(g), *inter alia*, shall be subject to certain penalties. The text of § 922(g) in turn provides that it shall be unlawful for any alien illegally or unlawfully in the United States, to possess any firearm or ammunition. The Supreme Court determined that the "knowledge" requirement of § 924(a)(2) applies to both elements of § 922(g)—the alien's status and the firearms possession.

We distinguish *Rehaif* from the instant case by noting that the scienter requirement in Article 120c(a)(2), UCMJ, is written into the text of the statute:

> Any person subject to this chapter who, without legal justification or lawful authorization . . . knowingly photographs, videotapes, films, or records by any means the private area of another person, without that other person's consent and under circumstances in which that other person has a reasonable expectation of privacy . . . is guilty of an offense . . . .

*Id.* (emphasis added).

In contrast, in *Rehaif*, the scienter requirement stated in 18 U.S.C. § 924(a)(2) was made applicable to a separate statute, 18 U.S.C. § 922(g), *in toto*. The Court itself distinguished its analysis in *Rehaif* from cases where "knowingly" introduces an element or elements of an offense: "This is notably not a case where the modifier 'knowingly' introduces a long statutory phrase, such that questions may reasonably arise about how far into the statute the modifier extends." *Rehaif*, __ U.S. at __, 139 S. Ct. at 2196. Thus, the grammatical structure of the statutes involved in *Rehaif* is very different from the grammatical structure of the statute involved in the instant case.

We therefore decline to automatically apply the "knowingly" requirement to every element of Article 120c(a)(2), but instead apply customary statutory interpretation rules to determine which elements must be committed knowingly to constitute a violation.

The plain reading of Article 120c(a)(2) indicates to us that "knowingly" modifies the verbs that immediately follow it ("photographs, videotapes, films, or records") and the direct object ("private area of another person"), but does not apply to more distant phrases: "without that other person's consent," or "under circumstances in which that other person has a reasonable expectation of privacy."

As the Government notes in its supplemental brief, a comparison of Articles 120c(a)(2) and 120c(a)(3) (broadcasting indecent images) strongly supports the proposition that "knowingly" as used in 120c(a)(2) applies only to

8

the first element. Unlike Article 120c(a)(2), Article 120c(a)(3) imposes criminal liability on one who "knowingly broadcasts or distributes any [recording of the private area of another person] that the person *knew or reasonably should have known* was made [without that other person's consent and when that other person had a reasonable expectation of privacy]." Art. 120c(a)(3), UCMJ (emphasis added).

In statutory interpretation issues such as this, we also must attempt to satisfy congressional intent. *See Rehaif*, __ U.S. at __, 139 S. Ct. at 2195 ("Whether a criminal statute requires the Government to prove that the defendant acted knowingly is a question of congressional intent."). The fact that Congress inserted a scienter requirement specifically applicable to the second element of Article 120c(a)(3) supports the proposition that Congress did not intend for there to be a scienter requirement for the second element of Article 120c(a)(2). We therefore decline to re-write the statute to apply a knowledge requirement to the element of lack of consent.

### III. CONCLUSION

After careful consideration of the record and briefs of appellate counsel, we have determined that the approved findings and sentence are correct in law and fact and no error materially prejudicial to the appellant's substantial rights occurred. Arts. 59, 66, UCMJ. Accordingly, the findings and sentence as approved by the convening authority are **AFFIRMED**.

FOR THE COURT:

RODGER A. DREW, JR.
Clerk of Court